**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RAYMOND MCDOWELL, et al.,

     Plaintiffs,

v.
                          Case No. 19-10217
                          Honorable Victoria A. Roberts

LIVONIA HOTEL BUSINESS, INC., et al.,

     Defendants.

_____/

**<u>ORDER:</u>**

**(1) <u>DENYING DEFENDANTS' MOTION TO ALTER JUDGMENT AS
TO PLAINTIFF DORSEY BASED ON PLAINTIFF MCDOWELL'S
ADJUDICATED FAULT [ECF No. 101];</u>**

**(2) <u>DENYING PLAINTIFF MCDOWELL'S MOTION TO ALTER OR
AMEND JUDGMENT [ECF NO. 106];</u>**

**(3)<u>GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING
DAMAGES [ECF NO. 102];</u>**

**(4)<u>DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A
MATTER OF LAW REGARDING DUTY AND CAUSATION [ECF
NO. 103]</u>**

**(5)<u>GRANTING DEFENDANTS' MOTION FOR EXPENSES AND
ATTORNEY'S FEES PURSUANT TO FRCP 37(c)(1)(a) [ECF NO.
95]; and</u>**

**(6)<u>GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR REVIEW OF PLAINTIFFS' BILL OF COSTS AND
OBJECTIONS TO THE SAME [ECF NO. 107].</u>**

1

## I.      Introduction

Raymond McDowell and Taj Dorsey ("Plaintiffs") were truckers from New Jersey hired to make a delivery in Michigan. They booked a room at Defendant America's Best hotel ("America's Best"). After arriving in the Detroit area, McDowell hired Antonio Fowler-Mitchell ("Fowler-Mitchell") from Craigslists.com to help with the offloading. In the early morning hours of February 3, 2018, Fowler-Mitchell broke into the hotel room where McDowell and Dorsey stayed. He and two unknown individuals assaulted and robbed them at gunpoint. Fowler-Mitchell is now in prison for his crimes.

Plaintiffs sued Defendants for negligence. They allege that Defendant Edward Makmoura, the front desk clerk at America's Best, gave Fowler-Mitchell a key to their room. Plaintiffs believe this act facilitated the break-in, and that Defendants breached the duty they owed to Plaintiffs as innkeepers.

During trial from March 22-28, 2022, Defendants submitted evidence of McDowell's own negligence. On the third day of trial, Defendants submitted a proposed verdict form that would have informed the jury that the Court would reduce Dorsey's damages in proportion to the percentage of fault allocated to McDowell for his own injuries. The Court rejected this proposal, ruling that such a reduction would be improper under Michigan law.

The jury awarded McDowell $140,000 in lost wages and $5,000 in property damages. However, the jury found McDowell 80% at fault for his own injuries and reduced his damages in proportion to his comparative fault. [ECF No. 90, PageID.2668]. It allocated 20% fault against Defendants for McDowell's injury.

The jury awarded Dorsey $63,333 in lost wages, $1,000 in property damages, $136,000 in past non-economic damages, and $36,000 in future non-economic damages. It found no fault on the part of Dorsey and allocated 100% fault to Defendants for Dorsey's injuries. The jury made no allocation of fault to McDowell for Dorsey's injuries and Defendants never requested that it be done.

Defendants filed five post-trial motions and Plaintiffs filed one. Two motions seek relief under Fed. R. Civ. P. 59(e). In ECF No. 101, Defendants' Motion to Alter Judgment As to Plaintiff Dorsey Based On Plaintiff McDowell's Adjudicated Fault, Defendants ask the Court to reduce Dorsey's damages based on the negligence of McDowell. On the other hand, in ECF 106, Plaintiff McDowell's Motion to Alter or Amend Judgment, McDowell asks the Court to remove an 80% reduction the jury subtracted from his damages based on the comparative fault the jury allocated to him for his own injuries.

3

In Part I (pp. 5-23), the Court addresses these two motions together since they both require analysis under Fed. R. Civ. P. 59(e).

In Part II (pp. 24-46), the Court addresses the two defense motions filed under Fed. R. Civ. P. 50(b).  In ECF No. 102, Defendants' Motion of Judgment as a Matter of Law Regarding Damages, Defendants say they are entitled to judgment on McDowell's claim for wage loss damages and Dorsey's claim for future damages. They argue that proofs on both claims were speculative and did not rise above conjecture.

In ECF No. 103, Defendants' Motion for Judgment as a Matter of Law Regarding Duty and Causation, Defendants say they are entitled to judgment and ask the Court to dismiss Plaintiffs' claims in their entirety.  They believe Plaintiffs presented only speculative proof on both duty and causation.

In Part III (pp. 47-58), the Court addresses the two motions concerned with costs. In ECF No. 95, Defendants' Motion for Expenses and Attorney's Fees Pursuant to Fed. R. Civ. P. 37(c)(1)(a), Defendants ask the Court to award them certain expenses and attorney fees based on Plaintiffs' failure to timely identify and disclose an expert and his reports. In ECF No. 107, Defendants' Motion Seeking Review of Plaintiffs' Bill of Costs and Objection to Same, Defendants object to Plaintiffs' proposed taxation of costs, and ask the Court to review and adjust the Bill of Costs.

4

Finally, in Part IV (pp. 58-59), the Court concludes the opinion.

For the following reasons, the Court **DENIES** ECF No. 101 and ECF No. 106. The Court **GRANTS IN PART AND DENIES IN PART** ECF No. 102. The Court **DENIES** ECF No. 103. The Court **GRANTS** ECF No. 95. Finally, the Court **GRANTS IN PART AND DENIES IN PART** ECF No.107.

## <u>PART I</u>

I.   **ECF No. 101, Defendants' Motion to Alter Judgment As to Plaintiff Dorsey Based On Plaintiff McDowell's Adjudicated Fault; and ECF No. 106, Plaintiff McDowell's Motion to Alter or Amend Judgment.**

A. **Fed. R. Civ. P. 59(e) Standard**

In a diversity case, federal law governs the district court's decision whether to grant a new trial and it is within the sound discretion of the trial court to make this determination. *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). A motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) asks a federal district court to correct a substantive judicial error or mistake within 28 days after entry of judgment. (Fed. R. Civ. P. 59(e) advisory committee's note to 1946 amendment); *see White v. N. H. Dep't of Emp't. Sec.*, 455 U.S. 445, 451 (1982).

To be successful on a motion to alter or amend a judgment, the moving party must establish an intervening change in controlling law, newly discovered evidence, manifest injustice, or a clear error of law or fact that is

so convincing that it induces the court to revise its earlier decision. *Roger Miller Music, Inc. v. Sony/ATW Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007); *see Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 568 (5th Cir. 2003); *see also Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999).

B. **ECF No. 101, Defendants' Motion to Alter Judgment As to Plaintiff Dorsey Based On Plaintiff McDowell's Adjudicated Fault.**

Defendants say the Court made a "clear error of law" in violation of Michigan's comparative fault legislative scheme when it denied their request to submit a verdict form notifying the jury that the Court would reduce Dorsey's damages by the percentage of fault attributable to McDowell for his own injuries. [ECF No. 101, PageID.3207]. That ruling was not a clear error of law.

Plaintiffs filed their complaint more than two years ago. In answering the complaint, Defendants asserted an affirmative defense: "the negligence, gross negligence, and/or willful or wanton misconduct of the Plaintiffs and/or others not including these Defendants acted as an intervening cause sufficient to bar any claim against these Defendants." [ECF No. 9, PageID.74].

Yet, in various iterations of draft Joint Final Pretrial Orders ("JFPTO") submitted and the final one entered by the Court, Defendants failed to mention this defense. It is bedrock law that the JFPTO governs trial proceedings and supersedes earlier pleadings. Fed. R. Civ. P. 16(e*); Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007).

Defendants also failed to give proper notice and preserve the possibility of an allocation of fault against Fowler-Mitchell as a nonparty at fault, MCL 600.2957(2); MCR 2.112(K)(3)(a).

So, as much as Defendants bemoan the fact that the jury did not reduce the Dorsey award in proportion to McDowell's negligence, they failed to follow proper procedure, propose proper instructions, and preserve their affirmative defenses that McDowell was a cause of Dorsey's injuries or that Fowler-Mitchell was responsible for the harm.

Defendants requested a comparative negligence jury instruction that was given to the jury. But if Defendants' intention was to demonstrate that McDowell proximately caused Dorsey's injuries, they abysmally failed. This one instruction was insufficient to guide the jury because Defendants did not request instructions concerning: (1) any duty McDowell may have owed Dorsey; (2) what conduct on the part of McDowell breached any duty he may

7

have owed Dorsey; or (3) how the jury could allocate McDowell's fault if it believed he caused some or all of Dorsey's harm.

Instead, at the eleventh hour and with no supporting instructions, Defendants submitted the proposed verdict form discussed earlier. This would have improperly stated the law. The Court declined to use the form, ruling: "an allocation of comparative fault between the plaintiffs is not the proper vehicle through which defendants can reduce their fault as to one plaintiff if the jury finds no comparative fault against that particular plaintiff. In other words, defendants' liability as to one plaintiff cannot be reduced by the comparative negligence of another plaintiff." [ECF No. 84, PageID.2164].

### 1. Michigan Comparative Fault Statutes Do Not Operate to Reduce an Innocent Plaintiff's Damages in Proportion to the Fault of a Co-Plaintiff.

Defendants misapprehend the Michigan's comparative fault scheme. They rely on several comparative fault statutes to support their claim for a reduction of Dorsey's recovery by the percentage of McDowell's fault for his own injuries.

Defendants cite MCL 600.6304(1), which calls for the jury to determine "the percentage of total fault of all persons that contributed to the death or injury, including each plaintiff…" [ECF No. 101, PageID.3208]. They also rely on MCL 600.6304(4), which states, "the liability of each defendant for

8

damages is several only and is not joint." This statute also states that, "a person shall not be required to pay damages in an amount greater than his or her percentage of fault as found under subsections (1)." *Id.*

While Michigan's comparative fault scheme abolished joint and several liability among defendants, it does not require reduction of an innocent plaintiff's damages based on the comparative fault of a co-plaintiff. *See* MCL 600.2959 ("the court shall reduce the damages by the percentage of comparative fault of the *person upon whose injury. . . the damages are based*. . ." (Emphasis added)). This mandate to reduce a plaintiff's damages by his own fault for his own injuries has nothing to do with either establishing liability in the first instance or allocation of fault between a plaintiff and a defendant who may share liability for another plaintiff's injuries.

*American Home Mortg. Acceptance, Inc. v. Appraisal Place, Inc.*, 476 F. Supp. 2d 636 (E.D. Mich. 2006), confirms the Court's understanding of the law. In that case, the court held that under Michigan law, "negligence is measured in terms of percentage, and any damages allowed shall be diminished in proportion to the amount of negligence attributable to the *person for whose injury recovery is sought*." *Id*. at 643. *See Alfieri v. Bertorelli*, 295 Mich. App. 189, 198 (2012) ("the question [concerning comparative negligence] is whether, in viewing the evidence most favorably

to the defendant, there is sufficient evidence for the jury to find negligence on the part of the injured plaintiff").

Dorsey's recovery can be reduced only by his own comparative negligence. Conversely, when it is proven that a co-plaintiff caused harm to an innocent plaintiff, the jury must allocate fault between the negligent co-plaintiff and defendant. The innocent co-plaintiff would then be entitled to a judgment against both parties at fault for the amount of negligence attributed to them, respectively.

Even if Defendants were correct and the statute did permit reduction of an innocent plaintiff's damages when a negligent co-plaintiff caused part of the innocent plaintiff's damages, that statute cannot be relied upon now to reduce Defendants' liability to Dorsey because the jury did not allocate fault to McDowell for Dorsey's injuries.

### 2. Defendants Failed to Provide Proper Jury Instructions to Support the Verdict Form Rejected by the Court.

Defendants say the Court erred when it denied their request to inform the jury via a verdict form that the Court would reduce Dorsey's damages based on McDowell's fault. They argue that the Court must now reduce Dorsey's damages by 80% to avoid a monetary judgment against them for more than their pro rata share of damages. [ECF No. 101, PageID.3232].

The jury was not given the opportunity and did not find that McDowell owed a duty to Dorsey or that he breached that duty. Since they were not given the opportunity to make these findings, the jury allocated 100% fault to Defendants for Dorsey's injuries and none to McDowell.

Question 6A of the Dorsey verdict form stated, "Using 100 percent as the total, enter the percentage of negligence attributable to the defendant." [ECF No. 90, PageID.2671]. The jury asked two questions about the verdict form during deliberations: "Can 6A be different for Raymond [McDowell] and Taj [Dorsey] given we feel the hotel has the same amount of negligence overall? If we assume negligence from one plaintiff, then would we add that Plaintiff's negligence to the hotel for the other plaintiff?" The Court answered both questions "yes." [ECF No. 92, PageID.2712]. The jury's questions did not operate as a proximate cause finding or an allocation of fault to McDowell for Dorsey's injuries.

Defendants' proposed verdict form, which the Court rejected, was deficient and did not include a directive for the jury to allocate fault to McDowell for Dorsey's injuries. Question 7 on Defendants' proposed verdict form asked:

Was the plaintiff Raymond McDowell's negligence a proximate cause of plaintiff Taj Dorsey's injury?

11

Answer: ___ (yes or no)

Question 8 asked:

> A. Using 100 percent as the total, enter the percentage of negligence attributable to the defendant: _____ percent . . .
>
> C. If you answered "yes" to Question No. 7, then using 100 percent as the total, enter the percentage of negligence attributable to the plaintiff Taj Dorsey. If you answered "no" to 7 this number should be zero:                     _____ percent

[ECF No. 108-10, PageID.3746].

Question 8 demonstrates Defendants' misapprehension of Michigan's comparative fault scheme. Since the jury did not allocate any fault to Dorsey for his own injuries, it would have been improper to allow the jury to reduce Dorsey's damages by the amount of negligence attributable to McDowell. The parties agreed to instruct the jury that: "there are two plaintiffs in this trial. Each plaintiff is entitled to separate consideration of his own case." M Civ JI 40.01. McDowell's negligence cannot be imputed to Dorsey for comparative fault purposes.

There was a proper route to arrive at a "fair share" of liability, and Defendants did not follow it. In addition to the omission of proper questions on the verdict form, Defendants failed to submit proper jury instructions.

Jury instructions regarding duty, breach, and liability between co-plaintiffs were not requested by Defendants, and they were necessary for the

jury to allocate liability to McDowell as the proximate cause of Dorsey's injuries. *Est. of Goodwin by Goodwin v. Nw. Michigan Fair Ass'n*, 325 Mich. App. 129, 141 (2018) (internal citations omitted).

When a party "asserts that a person's negligence is a proximate cause of the damage sustained by a plaintiff, before fault may be allocated to that person under the comparative-fault statutes, there must be proof that the person owed a legal duty to the injured party." *Id.* (*citing Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18, 21-22 (2009)). "Without owing a duty to the injured party, the 'negligent' actor could not have proximately caused the injury and could not be at 'fault' for purposes of the comparative fault statutes." *Id.* (internal citations omitted).

Defendants failed to request the critical roadmap of jury instructions concerning any duty McDowell owed Dorsey and breach, making it impossible for the jury to allocate fault to McDowell for Dorsey's injuries. A defendant who attempts to mitigate his liability through a comparative fault defense has the "burden of alleging and proving that another person's conduct was a proximate cause of the plaintiff's damages." *Lamp v. Reynolds*, 249 Mich. App. 591, 599, 645 (2002).

Even with proper jury instructions and verdict forms, the jury still would not have been permitted to reduce Dorsey's damages. Instead, it could have

13

assigned a percentage of liability to McDowell for Dorsey's injuries. With a jury allocation of fault to McDowell for Dorsey's injuries, Defendants could have avoided being responsible for more than their fair share of liability. *See* MCL 600.2957(1) ("the liability of each person shall be allocated under this section by the trier of fact . . . in direct proportion to the person's percentage of fault").

### 3. The Comparative Negligence Instruction Given Was Not Sufficient to Explain the Potential Liabilities and Duties of a Co-Plaintiff.

Defendants are under the misimpression that the comparative negligence instruction they requested was sufficient to cover any duty the Plaintiffs may have owed one another.

The jury instructions included the following comparative negligence definition: "the total amount of damages that the plaintiff would otherwise be entitled to recover shall be reduced by the percentage of plaintiff's negligence that contributed as a proximate cause to his injury." [ECF No. 91, PageID.2692]. The instruction says nothing about co-plaintiffs and only requires reduction when a plaintiff's negligence is a proximate cause of his own injury.

### 4. The Duty Instructions Given Were Not Sufficient to Explain the Potential Liabilities of a Co-Plaintiff.

Regarding any duty Plaintiffs may have owed in general, the parties relied on two jury instructions. M Civ JI 10.02 Negligence of Adult- Definition:

> Negligence is the failure to use ordinary care. Ordinary care means the care a reasonably careful person would use. Therefore, by 'negligence,' I mean the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do, under the circumstances that you find existed in this case.
>
> The law does not say what a reasonably careful person using ordinary care would or would not do under such circumstances. That is for you to decide.

They also relied on M Civ JI 10.04 Duty to Use Ordinary Care—Adult—Plaintiff: "it was the duty of the plaintiff to use ordinary care for *his own* safety and the safety of *his* property." [ECF No. 91, PageID.2693] [emphasis added]. This instruction does not describe a duty one plaintiff may owe another. Defendants never requested an instruction regarding McDowell and Dorsey's duty toward each other.

Neither instruction refers to a duty between co-plaintiffs.

### 5. Among Other Things, the Missing Link in Defendants' Attempt to Reduce Their Fault and Thereby Dorsey's Damages, is Their Failure to Request M Civ JI 42.01: Allocation of Fault of Parties.

Instruction M Civ JI 42.01 tracks the statute MCL 600.6304(1), which requires the allocation of fault between parties and nonparties. Defendants

15

rely upon that statute to argue the Court erred when it rejected their proposed verdict form.

This instruction must be given if multiple parties are at fault: "If you find that multiple parties are at fault, then you must allocate the total fault among those parties. In determining the percentage of fault of each party, you must consider the nature of the conduct of each party and the extent to which each party's conduct caused or contributed to the plaintiff's injury. The total must add up to 100 percent." M Civ JI 42.01.

Since Defendants believed one or both Plaintiffs were negligent, it was incumbent on them to request the jury to find fault and place it where Defendants believed it should be placed, and to allocate fault between Defendants and Plaintiffs. They made no such request. This instruction is triggered upon a finding of fault of multiple parties. As stated earlier, no instructions were ever proposed that would have allowed the jury to find fault for McDowell as it pertained to Dorsey.

The Court **DENIES** Defendants' Motion to Alter Judgment As to Plaintiff Dorsey Based On Plaintiff McDowell's Adjudicated Fault [ECF No. 101].

### C. ECF No. 106, Plaintiff McDowell's Motion to Alter or Amend Judgment.

In this motion, McDowell argues that (1) Defendants did not properly plead their comparative negligence defense, and (2) he did not owe or

breach a duty to keep himself safe from and to reasonably respond to Fowler-Mitchell's crimes. McDowell believes he is entitled to the full 100% of the damages award and that it should not be reduced by any comparative negligence on his part.

McDowell fails to show he is entitled to alter or amend the judgment under Fed. R. Civ. P. 59(e) because: (1) Plaintiffs were on notice that Defendants intended to assert comparative negligence as a defense; (2) McDowell owed a duty to himself to use ordinary care to keep himself safe from and to respond reasonably to any foreseeable criminal activity of third parties; and (3) the jury found that he breached this duty, proximately causing 80% of his own damages.

Evidence in the record supports the verdict. McDowell makes no argument to compel the Court to revise the jury award.

### 1. Plaintiffs Were on Notice that Defendants Intended to Assert Comparative Negligence as An Affirmative Defense.

Defendants asserted Affirmative Defense No. 25 in their Answer to Plaintiffs' Amended Complaint: "the negligence, gross negligence, and/or willful or wanton misconduct of the Plaintiffs and/or others not including these Defendants acted as an intervening cause sufficient to bar any claim against these Defendants." [ECF No. 9, PageID.74].

Defendants also assert, and McDowell does not dispute, that Plaintiffs' counsel stipulated to submit a comparative negligence jury instruction to the jury. [ECF No. 110, PageID.3765].

On March 27, 2022, the Court entered its Order Regarding Verdict Form. That order stated: "plaintiffs are on notice that defendants assert comparative negligence as a defense." [ECF No. 84, PageID.2163].

McDowell argues that, on the fourth day of trial, the Court rejected the notion that Plaintiffs were on notice of Defendants' comparative negligence defense. [ECF No. 114, PageID.3870]. McDowell cites the following dialogue:

> MR. RANDAZZO: And then with respect to the other two parties, they are parties to the case. Nonparties at fault don't have to be filed, and certainly the allocation of fault against them, they have been on notice since the beginning of this case. And the allocation of fault is not based on comparative in each other's case. It's based on the allocation of fault required because they are potentially at fault for the claimed damages in each other's cases.
>
> THE COURT: What do you do with – okay. But you haven't made that claim. The claim you made was that they were comparatively negligent. You didn't say that the negligence of one caused the injury of the other one. You all didn't do that.
>
> MR. RANDAZZO: I'm sorry, I just want to make the record clear. Just  so the Court understands and appreciates what I was referring to, there is a suggestion that the defendants didn't put the plaintiffs on notice regarding the plaintiffs' negligence. I'll just refer the Court to Paragraph 25, which deals specifically in the affirmative offenses that the negligence, gross negligence and

willful misconduct of the plaintiffs and/or others, not including these defendants, acted as the intervening cause sufficient to bar any claim. So, again –

THE COURT: Okay. I'm aware of that paragraph. I don't see anything that suggests that the comparative negligence of one is responsible for the damage done to the other. I'm done, Mr. Randazzo, on this issue.

[ECF No. 114, PageID.3870] [citing [ECF No. 96, PageID.2790, 2795]].

In this dialogue, the Court only rejected Defendants' argument that their comparative negligence defense provided sufficient notice of Defendants' intent to assert that one Plaintiff may have breached a duty and caused harm to the other Plaintiff. The Court did not rule that Defendants failed to plead comparative negligence as a defense.

Defendants also identify several instances where they claim Plaintiffs were put on notice of the comparative negligence defense. [ECF No. 110, PageID.3765-66]. In his reply, McDowell fails to rebut any of their arguments.

The Court finds that Plaintiffs were on notice of Defendant' comparative negligence defense.

The Court will now discuss the duty McDowell owed to himself.

### 2. McDowell Owed a Duty to Keep Himself Safe From or Reasonably Respond to Any Foreseeable Criminal Activity of Third Parties.

McDowell argues that the judgment must be altered to remove the 80% reduction of his award. He says the jury's allocation of fault to him for his own injuries was improper because he had no duty to anticipate "inherently unforeseeable" criminal activity. [ECF No. 106, PageID.3319-30].

The parties' briefs incorrectly focus on the duty McDowell may have owed to Dorsey, but the relevant question is whether McDowell owed a duty to himself to take reasonable steps to guard against or respond reasonably to the criminal activity of Fowler-Mitchell.

Negligence has four elements: duty, breach, causation, and damages. *Fitzpatrick v. Bridgestone Retail Operations, LLC*, 444 F. Supp. 3d 786 (E.D. Mich. 2020). At issue here are duty and breach.

The parties agreed to jury instructions regarding Plaintiffs' duty of care. Pursuant to M Civ JI 10.04 Duty to Use Ordinary Care—Adult—Plaintiff: "It was the duty of the plaintiff in connection with this occurrence, to use ordinary care for his own safety and the safety of his property. M Civ JI 10.04. Instruction M Civ JI 10.02 was also given to the jury. It states:

> Negligence is the failure to use ordinary care. Ordinary care means the care a reasonably careful person would use. Therefore, by "negligence," I mean the failure to do something that a reasonably careful person would do, or the doing of

20

something that a reasonably careful person would not do, under
the circumstances that you find existed in this case. The law does
not say what a reasonably careful person using ordinary care
would or would not do under such circumstances. That is for you
to decide.

M Civ JI 10.02.

Through these instructions, the Court informed the jury that McDowell

owed a duty of ordinary care to himself; it was incumbent on him to act as a

reasonably careful person would under the circumstances presented.

The parties also agreed to M Civ JI 15.01- Definition of Proximate

Cause: "when I use the words 'proximate cause' I mean first, that the

negligent conduct must have been a cause of plaintiff's injury, and second,

that the plaintiff's injury must have been of a type that is a natural and

probable result of the negligent conduct."

Michigan courts hold that both duty and proximate cause "depend in

part on foreseeability." *Babula v. Robertson*, 212 Mich. App. 45, 53 (1995)

(internal quotations omitted). There is "a duty to respond reasonably to

situations occurring on [the] premises that pose a risk of imminent and

foreseeable harm to identifiable invitees," but "no duty to otherwise anticipate

and prevent the criminal acts of third parties." *Graves v. Warner Bros*., 253

Mich. App. 495, 546, 656 (1977). Criminal acts of third parties can be

foreseeable in some situations. *See Dawe v. Bar-Levav & Assoc*. (On Remand), 289 Mich. App. 380, 394 (2010).

As a matter of law, McDowell owed a duty to keep himself safe from and to respond reasonably to any foreseeable criminal activity of Fowler-Mitchell. McDowell can point to no error of law, or any other basis under Fed. R. Civ. P. 59(e) for the Court to overturn the jury's verdict regarding McDowell's duty of care to himself.

### 3. The Jury Made No Mistake of Fact in Determining that McDowell Breached His Duty of Care and Proximately Caused His Own Injuries.

At several points in McDowell's Fed. R. Civ. P. 59(e) motion, he asks the Court to alter the judgment because the jury verdict regarding his breach of duty is unsupported by evidence. McDowell's argument suggests that the jury made a mistake of fact in finding that he breached his duty of care and proximately caused his own injuries.

McDowell is incorrect. The record contains sufficient evidence to raise a question of fact regarding the foreseeability of Fowler-Mitchell's crimes and the reasonableness of McDowell's actions.

First, McDowell testified that he hired Fowler-Mitchell from Craigslist and obtained his driver's license because there had been a prior incident where he hired a mover who broke into a home. [ECF No. 110,

PageID.3773]. McDowell obtained Fowler-Mitchell's driver's license but failed to check Fowler-Mitchell's criminal background. [ECF No. 110, PageID.3773]. Further, rather than meeting at the motel lobby or parking lot, McDowell invited Fowler-Mitchell to come inside his room. [ECF No. 110, PageID.3773]. After socializing, McDowell pulled out a wad of cash in front of Fowler- Mitchell and paid him for his work. [ECF No. 110, PageID.3773]. McDowell testified that later in the night, Fowler-Mitchell called him three times and threatened him. Yet McDowell did not call the police or seek help. [ECF No. 110, PageID.3773].

To find McDowell 80% at fault for his own injuries, the jury must have concluded that Fowler-Mitchell's crimes were foreseeable and that McDowell's conduct leading up to the injury was below the standard of care that McDowell should have used for his own safety.

McDowell presents no clear error of law or fact, or any other basis under Fed. R. Civ. P. 59(e) that would cause the Court to revisit the jury's decision.

The Court **DENIES** Plaintiffs' Motion to Alter of Amend Judgment [ECF No. 106].

## PART II

I. **ECF No. 102, Defendants' Motion for Judgment as a Matter of Law Regarding Damages; and ECF No. 103, Defendants' Motion for Judgment as a Matter of Law Regarding Duty and Causation.**

The jury returned a verdict awarding McDowell $140,000 in lost wages and $5,000 in property damages for a total award of $145,000. However, the jury found that McDowell was 80% at fault, reducing his award by $116,000 to a total final award of $29,000. [ECF No. 106, PageID.3315].

The jury awarded Dorsey $63,333 in lost wages, $1,000 in property damages, $136,000 in past non-economic damages, and $36,000 in future non-economic damages for a total award of $236,333. [ECF No. 90, PageID.2671].

The court entered an Order of Judgment for Plaintiffs consistent with the jury's verdict. [ECF No. 94].

### A. Fed. R. Civ. P. 50(b) Standard

A post-trial motion for judgment notwithstanding the verdict ("JNOV") under Fed. R. Civ. P. 50(b), requires the Court to evaluate the legal sufficiency of trial evidence. To succeed on such a motion, the moving party must first make a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) during trial and before the jury determines a verdict.

"In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted." *Cline v. United States,* 997 F.2d 191, 196 (6th Cir. 1993); *See also Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 427 (6th Cir. 2004) (citation and quotation omitted).

A JNOV motion should be granted "if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ." *Cline,* 997 F.2d at 196.

## B. ECF No. 102, Defendants' Motion for Judgment as a Matter of Law Regarding Damages.

### 1. Background

At trial both Plaintiffs asserted claims for lost wages, property damages, and present and future non-economic damages.

During pretrial preparations, McDowell submitted an expert report from Barry Grant, CPA stating that he had $95,755 in lost wages. [ECF No. 63-2,

PageID.1623]. Grant's report was ultimately stricken and not admitted into evidence because McDowell failed to timely disclose it. [ECF No. 73].

McDowell testified at trial that he grossed $200,000 annually before paying Dorsey between $50,000 and $60,000 annually, leaving McDowell with approximately $150,000 to $160,000 in annual earnings. He also testified that he suffered 14 months of wage loss during 2018 due to the robbery, for a total of $175,000. [ECF No. 96, PageID.2951].

Dorsey testified that his annual salary was $50,000-$60,000 and he missed 19 months of work in 2018-2019 due to the robbery. [ECF No. 88, PageID.2510]. Dorsey alleged $95,000 in wage loss. [*Id*].

On Dorsey's claims for non-economic damages, the parties stipulated to the admission of medical records detailing his Post Traumatic Stress Disorder ("PTSD") diagnosis. [Joint Exh. 4]; [ECF No. 88, PageID.2503]. Dorsey testified about the symptoms he began experiencing after the robbery. He said under oath, "I don't go out to movies, nothing like that, public events, because I can't enjoy anything because I'm always looking around aware, thinking somebody is going to come out of somewhere. I don't, I don't do like normal - - my normal life. All I do is work and come home." [ECF No. 88, PageID.2504]. Dorsey also testified that he and his girlfriend stopped having sex after the incident. [*Id*. at PageID.2505]. "I'm going to be dealing

with this for the rest of my life [,]" Dorsey testified. [*Id*]. This testimony is relevant to the Court's determination of whether his claims for present and future non-economic damages are supported by evidence.

Five days before trial, Plaintiffs' counsel withdrew Barry Grant as an economic expert. He was slated to testify concerning the life expectancies of Plaintiffs. On the first day of trial, the Court struck the expert report of James Grassi, L.C.S.W. and his opinions regarding future damages of Dorsey. [ECF No. 82]. On the third day of trial, Plaintiffs' counsel filed a motion for the Court to take judicial notice of life expectancy tables. [ECF No. 96, PageID.2812]. The parties briefed the issue, but Plaintiffs' counsel ultimately withdrew his request because if granted, the Court would have allowed evidence concerning Plaintiffs' alleged drug and alcohol use and prior convictions. [*Id*].

On the last day of trial, the Court held a hearing addressing all outstanding issues with jury instructions and the verdict form. [ECF No. 96, PageID.2788]. During the hearing, Defense counsel argued for the exclusion of certain portions of M. Civ. J.I. 51.01—Measure of Damages—Personal and Property, which Plaintiffs had amended to refer to future damages. Defendants argued for the exclusion of the word "future" from the instruction since Plaintiffs did not present evidence of future damages. [*Id*., PageID.2803-2804, 2929-2930]. Plaintiffs' modified M. Civ. JI 51.01 and took

out the word "future." The Court ruled that there would be no further modifications to M. Civ. JI 51.01 and ruled that the phrase, "in the future" would be eliminated. [*Id.*, PageID.2804-2806].

During the hearing, Defense counsel also requested that the Court remove M. Civ. JI. 53.06—Effect of Inflation on Future Damages—arguing that Plaintiffs waived future damages by failing to present any evidence to support them. [*Id.*, PageID.2812-2814]. The Court initially ruled that without evidence of life expectancy, the defense was correct, and the future damages would come out. [*Id.*, PageID.2815].

On the last day of trial Defendants made a motion for judgment as a matter of law. Among other things, they argued that Plaintiffs failed to submit competent, nonspeculative evidence concerning lost wages, non-economic damages, and medical causation. [ECF No. 96, PageID.2917]. After hearing argument on the motion, the Court returned to the future damages issue.

The Court asked Defense counsel to explain where in the law or jury instructions life expectancy had to be established to recover future non-economic damages. [ECF No. 96, PageID.2922]. Defense counsel pointed to MCL 600.6305(1)(b): "[a]ny verdict or judgment rendered by a trier of fact in a personal injury action subject to this chapter shall include specific findings [regarding]. . . [a]ny future damages and the periods over which they

will accrue, on an annual basis, for each of the following types of future damages." [*Id*].

Defense counsel also argued that Plaintiffs lacked testimony and/or evidence from a medical provider that Plaintiffs would have future pain and suffering. [*Id*]. Defense counsel argued that they relied on the Court's prior ruling that there would be no future damages during their cross-examinations of Plaintiffs and cut their examinations short. [*Id*., PageID.2926].

The Court informed Plaintiffs' counsel, "one thing, Mr. Haddad, that I do believe may be problematic for you without life expectancy is that I believe both of your clients said that they believed their damages were going to go for the rest of their lives. I think that would be precluded without any proof of life expectancy." [ECF No. 96, PageID.2927]. Plaintiffs' counsel responded that it would be reasonable to assume that future damages would continue to age 60 for both Plaintiffs, citing the life expectancy of 62 for a truck driver. [*Id*]. The Court replied: "[t]hat's still a long window out." [*Id*].

Defense counsel responded by stating: "right here is the reason why you've got to have medical testimony. He's just guessing, and we cannot submit to a jury something that they have to cause to speculate. There's been no testimony." [ECF No. 96, PageID.2927]. The Court then asked Defense counsel: "[a]ttorneys can't suggest to jurors what numbers they

should put into a pain and suffering line?" [*Id*., PageID.2933]. Defense counsel responded that any numbers would be speculative and asked a rhetorical question, "why can't we put 70 [lines]? … There is no testimony … with any certainty whatsoever on their lives. Their claim here is that they are suffering these things, very frankly, without medical causation, which I don't think in this instance with a specific diagnosis they can do." [*Id*., PageID.2933-2934].

Following these arguments, the Court allowed Plaintiffs to submit to the jury a three-year period of future pain and suffering. [ECF No. 96, PageID.2934-2935]. The Court further inserted the previous jury instructions regarding future damages that were eliminated earlier that day and before plaintiffs' cross examinations. [*Id*., PageID.2938].

Defendants argue Plaintiffs failed to present any competent evidence to support: (1) McDowell's jury award of $140,000 in lost wages, (2) Dorsey's jury award of $32,772.44 in future non-economic damages, and (3) Dorsey's $172,000 award for present non-economic damages. [ECF No. 102, PageID.3242].  However, Defendants only ask the Court to dismiss (1) and (2) from the judgment, in addition to any other relief the Court may deem proper. [ECF No. 102, PageID.3243].

### 2. Applicable Law

A plaintiff asserting a cause of action has the burden to prove damages with reasonable certainty. *See Health Call of Detroit v. Atrium Home & Health Care Services, Inc.,* 706 N.W. 2d 843, 852 (Mich. App. 2005)*; see also Kubicek v. J. Walter Thompson U.S.A., Inc*., 902 F.2d 33 (6th Cir. 1990) (internal quotations omitted). However, "mere uncertainty as to the amount [of damages] will not preclude the right of recovery, . . . damages need not be ascertained with mathematical precision. [A] reasonable basis must exist for their computation." *Shivers v. Schmiege*, 285 Mich. App. 636, 643-645 (2009) (*citing Berrios v. Miles, Inc*., 226 Mich. App. 470, 478–479 (1997). *See also Gilbert v. Daimler Chrysler Corp*., 470 Mich. 749, 767, 685 (2004) ("a jury's estimation of future economic loss must have support in the record").

A trial court should grant a party's JNOV motion with respect to damages if the jury was permitted to speculate concerning the amount of those damages. *Shivers*, 285 Mich. App. at 643-645. A plaintiff "must present data from which the amount of probable loss could be ascertained as a matter of reasonable inference." *Agric. Services Ass'n, Inc. v. Ferry-Morse Seed Co., Inc*., 551 F2d 1057, 1072 (6th Cir. 1977).

Witnesses can testify as experts or as lay persons. Under Fed. R. Evid. 701, if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge.

McDowell and Dorsey both testified about the facts underlying their damages claims.

### 3. Analysis

#### a. McDowell and Dorsey's Lost Wages.

Defendants say the lost wages awards for McDowell and Dorsey are unsupported by sufficient evidence. But in making this argument, they mischaracterize McDowell's testimony. Defendants claim "McDowell . . . admitted that after subtracting expenses . . . he made no money as a truck driver." [ECF No. 102, PageID.3241]. McDowell did not give this testimony. He testified that:

> Q. In 2018, you didn't make no money as a truck driver; isn't that right, sir?
>
> A. Basically yeah.

[ECF No. 96, PageID.2866]. McDowell asserts a claim for wages lost in 2018, he says he did not earn wages that year because of the robbery. He never testified that his expenses were the reason for his money problems.

It is true that, in determining lost wages, the factfinder properly may assess, "whether or to what extent plaintiff incurred business expenses . . . while incurring associated lost wages, and whether plaintiff should recover gross lost wages or lost wages net of all or a portion of his business expenses." *Diallo v. Am. Country Ins. Co*., No. 349049, 2020 WL 2507366, at *3 (Mich. Ct. App. May 14, 2020).

Defendants correctly point out that McDowell could not provide the jury with an amount in lodging, food, and labor he paid every month out of his yearly salary. But McDowell's failure to recall an amount for these expenses does not make his lost wages award speculative. Defendants failed to produce evidence to rebut Plaintiffs' claimed damages. The jury determined with reasonable certainty that, after paying Dorsey, McDowell grossed approximately $140,000 annually.

Defendants next complain that McDowell overstated his income. As proof, they point to the stricken report of Barry Grant, CPA, which stated that McDowell made $95,755 annually. This report was not admitted into evidence and Defendants did not attempt to use it to impeach McDowell's

33

testimony about his salary. It is not part of the trial record, and the Court will not consider it for purposes of this motion.

Also, McDowell is not the owner of the business and his personal expenses for lodging, food, and payment to his laborers are not business expenses for purposes of this motion.

Regarding Dorsey's lost wages, both he and McDowell testified that Dorsey made $50,000-$60,000 a year. Dorsey also testified that "he was paid in cash, and never filed taxes." [ECF No. 88, PageID.2508, 2527-2528].

The fact that Dorsey did not pay taxes on his income does not make his testimony speculative, and Defendants advance no argument for why his tax returns were necessary for the jury to determine his yearly salary. *See Lessard v. Whittemore*, No. 338306, 2019 WL 4180170, at *5 (Mich. Ct. App. Sept. 3, 2019) (reversing the trial court's grant of summary disposition with respect to plaintiff's claim for lost wages and ruling that plaintiff "did not need documentary evidence [to prove lost wages], as his proffered testimony established that he had a business and made approximately $300 per week from that business prior to the accident. The fact that plaintiff never filed any tax documents nor made any filing with the state regarding his business would not preclude a finding that he actually engaged in this business").

34

Both McDowell and Dorsey gave lay witness testimony rationally based on their perception. That type of testimony can be helpful to the jury's determination of income. No specialized knowledge was required for them to testify. They were competent witnesses under Fed. R. Evid. 701 and their testimony was sufficient to allow the jury to determine lost wages with reasonable certainty.

### b. Dorsey's Past and Future Non-economic Damages.

#### i. Past Non-economic Damages.

Defendants believe Dorsey's testimony about his past non-economic damages was speculative. They claim Dorsey experienced mental health issues prior to the robbery and that, because Dorsey submitted no expert testimony showing the robbery was a proximate cause of his injuries, the award for past non-economic damages is unsupported by evidence. [ECF No. 117, PageID.3920].

But expert testimony is not required to establish non-economic damages. A plaintiff may testify regarding his or her own subjective feelings, symptoms and the timing of those symptoms to legitimately place emotional damages before the jury. *See Silberstein v. Pro-Golf of Am., Inc.*, 750 N.W.2d 615, 627-28 (Mich. App. 2008); Fed. R. Civ. P. 701. *See also Williams v. Hamilton Cnty., Tennessee*, No. 1:15-CV-74, 2018 WL 1586234,

at *2 (E.D. Tenn. Mar. 31, 2018) ("Plaintiff may testify about when his symptoms began or worsened or what caused them, to the extent that type of causation would be within a lay person's realm of knowledge. But he may not testify as to causation where specialized medical knowledge would be necessary.").

Defendants rely on *Howard v. Feld*, 100 Mich. App. 271, 273 (1980), to argue that expert testimony is necessary to establish causation. In that case, the plaintiff injured his hip in an automobile accident prior to an alleged assault by defendants. *Id*. at 273. However, plaintiff claimed that the assault created the need for him to undergo hip surgery. *Id*. The court held that an objection to this line of testimony was proper because plaintiff was not qualified to render an opinion regarding the reason for his hip operation. *Id*.

In *Burton v. Topacz*, No. 212627, 2000 WL 33407430, at *2 (Mich. Ct. App. Aug. 18, 2000), a plaintiff faced with an illness testified that she noticed the distinct smell of chemicals, and her symptoms occurred when certain chemicals were sprayed improperly. *Id*. The jury found that the chemicals caused her injury. *Id*. The court upheld the verdict, ruling that this information was within her knowledge as a lay witness and did not require an expert for the jury to establish the spraying of chemicals as a cause of her symptoms. *Id*.

Like *Burton*, Dorsey testified about his symptoms, their timing in relation to the robbery, and his treatment. The parties stipulated to the admission of Dorsey's Veterans' Health Administration ("VA") medical records detailing his PTSD diagnosis. Importantly, Dorsey was not permitted to give testimony on the causation of his symptoms or PTSD diagnosis, consistent with *Howard*.

Defendants say, "the inference that the Defendants were the cause of [Dorsey's] mental health issues require [sic] the factfinder to conclude that, because the incident preceded Dorsey's alleged manifestation of symptoms, the symptoms must have stemmed from the incident . . . this reasoning invokes the fallacy of *post hoc, ergo propter hoc*: merely because one event follows another does not mean that the first event caused the second." [ECF No. 117, PageID.3921] [*citing Tipton v. William Beaumont Hosp*, 266 Mich. App 27, 37 (2005)].

Defendants' argument is without merit. "Michigan law allows recovery for mental anguish based on the plaintiff's own testimony" as long as there is "specific and definite evidence of [a plaintiff's] mental anguish, anxiety or distress." *Moody v. Pepsi-Cola Metro. Bottling Co*., 915 F.2d 201, 210 (6th Cir. 1990).

37

Dorsey has specific and definite evidence of his mental anguish. It is not merely the timing of Dorsey's injury that raises a question of fact regarding causation. With respect to his VA medical records, Dorsey testified that he was treated seven times by the VA for events related to the robbery. [ECF No. 88, PageID.2522]. Makmoura also testified that: (1) he was working as the night clerk for the motel on the night of the robbery; (2) he never requested identification from Fowler-Mitchell; and (3) he provided Fowler-Mitchell with a keycard. [ECF No. 86, PageID.2269-2306].

The trial evidence was sufficient to allow the jury to draw a reasonable inference that Defendants' conduct was an actual and proximate cause of Dorsey's injury.

Defendants argue that Dorsey's claim for present non-economic damages was undermined by VA records, admitted as Joint Trial Exhibit 4B. The records show that, approximately 18 months after the robbery, Dorsey reported to the VA that he was not having any symptoms and had a negative mental health screen. [ECF No. 102, PageID.3255]. This evidence does not undermine the reasonable certainty of the Dorsey award for present non-economic damages. Instead, it undermines his claim for future non-economic damages, which the Court discusses next.

### ii.  Future Non-economic Damages.

Defendants correctly point out that Dorsey produced no competent evidence that he would likely continue to experience symptoms for the rest of his life or that he would live three more years. Without testimony as to life expectancy or judicial notice of Dorsey's life expectancy, the jury was left to speculate as to whether Dorsey would experience symptoms in the future and how long he would live.

Dorsey testified "I'm going to be dealing with this for the rest of my life." No. 88, PageID.2504]. He provided no testimony from which the jury could infer that he would experience symptoms for the rest of his life or how much longer he would live. And Plaintiff's counsel withdrew his request for the Court to take judicial notice of Dorsey's life expectancy. There is no evidence to support Dorsey's claim for future non-economic damages.

The Court **GRANTS** Defendants' motion with respect to Dorsey's future non-economic damages and **DENIES** it with respect to Plaintiffs claim for lost wages and Dorsey's claim for present non-economic damages.

In granting a JNOV motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.

Plaintiffs say Defendants' JNOV motion is a *de facto* motion for *remittitur* under Fed. R. Civ. P. 59, and that a plaintiff's consent is required for the Court to remit the jury award. Plaintiffs are incorrect; Defendants' Fed. R. Civ. P. 50(b) motion argues that the record is absent of evidence to support the jury's verdict. It does not argue that the jury award is excessive nor do they ask the Court to assess the reasonableness of the award in light of the evidence to support it.

The Court will reduce Dorsey's award by $32,772.44 and direct the entry of judgment as a matter of law accordingly.

### C. ECF No. 103, Defendants' Motion for Judgment as a Matter of Law Regarding Duty and Causation.

#### 1. The Jury's Verdict Regarding Defendants' Breach as a Proximate Cause of Plaintiffs' Injuries Was Supported by Evidence.

Defendants argue that Plaintiffs failed to submit evidence regarding (1) breach of a duty Defendants owed to Plaintiffs and (2) causation. They now say their only duty was that of a shopkeeper, even though they agreed to innkeeper duty in the JFPTO. [ECF No. 73, PageID.1879].

Shopkeeper duty requires them "to reasonably expedite a police response . . . once circumstances arose that would cause a person to recognize a risk of imminent and foreseeable harm to an identifiable invitee." *MacDonald v. PKT, Inc.,* 464 Mich. 322, 334 (2001). However, a

shopkeeper's duty is not to otherwise anticipate and prevent the unforeseeable criminal acts of third parties. *See Bailey v. Schaaf,* 494 Mich. 594, 614; 835 N.W.2d 413 (2013).

Plaintiffs disagree. They contend that Defendants owed them the duty of an innkeeper and that this duty requires Defendants to protect guests from injuries, including taking the appropriate steps to protect them from assault. [ECF No. 113, PageID.3844].

Defendants also say there is no evidence of causation, arguing that McDowell was the cause in fact of his own injuries. Plaintiffs disagree. They contend that Makmoura's actions were a proximate cause of Plaintiffs' injuries.

Under Michigan law, Plaintiffs must prove four elements to establish a negligence claim: (1) Defendants owed a duty to Plaintiffs; (2) Defendants breached that duty; (3) Defendants' conduct was the actual and proximate cause of the harm to Plaintiffs; and (4) damages. *Case v. Consumers Power Co.,* 463 Mich. 1, 6 (2000). The jury apparently concluded that trial evidence established all elements.

**2. Defendants Owed the Duty of an Innkeeper Exercising Ordinary Care and Sufficient Evidence Supports the Jury's Verdict that they Breached that Duty.**

Defendants say that Makmoura called the police once McDowell came to the lobby following the assault and robbery. They believe that call was sufficient to reasonably expedite police involvement and fulfill Defendants' duty of care. But Defendants' argument fails to correctly address the duty owed and when their duty began.

The parties agreed in the JFPTO that the applicable duty was the duty of an innkeeper. Michigan law is clear: "[a]n innkeeper has a duty to protect guests from injury*." Upthegrove v. Myers*, 99 Mich. App. 776, 779 (1980). "The innkeeper must exercise ordinary care and prudence to keep his premises reasonably safe for business invitees." *Id*. "That same duty is extended to guests of guests, who have a right to expect a premises to be reasonably safe." *Id*; [ECF No. 73, PageID.1879]. As soon as McDowell and Dorsey checked in, Defendants' duty to exercise ordinary care arose.

Under Michigan law, duty and proximate cause "depend in part on foreseeability." *Babula v. Robertson*, 212 Mich. App. 45, 53 (1995). There exists "a duty to respond reasonably to situations occurring on [the] premises that pose a risk of imminent and foreseeable harm to identifiable invitees,"

but "no duty to otherwise anticipate and prevent the criminal acts of third parties." *Graves v. Warner Bros*., 253 Mich. App. 495, 546, 656 (1977). This does not mean that criminal acts by third parties are never foreseeable. *See Dawe v. Bar-Levav & Assoc*. (On Remand), 289 Mich. App. 380, 394 (2010).

Although Makmoura had no duty to predict that a criminal act would occur, it was necessary for him to react reasonably when faced with circumstances that presented a risk of foreseeable harm to his guests. This duty required more of him than to just call the police after a crime has occurred.

Makmoura testified that he felt something was not right about his interaction with Fowler-Mitchell, yet he gave him a key card. This evidence supports the jury's finding that Makmoura failed to react reasonably when faced with circumstances that presented a risk of foreseeable harm.

The parties submitted M Civ JI 10.05: Duty to Use Ordinary Care-Adult- Defendant to the jury. It states that "it was the duty of the defendant, in connection with this occurrence, to use ordinary care for the safety of the plaintiff and plaintiff's property."  The parties also submitted M Civ JI 10.02, which states: "negligence is the failure to use ordinary care. Ordinary care means the care a reasonably careful person would use."

43

According to 10.02, negligence means "the failure to do something that a reasonably careful person would do or the doing of something that a reasonably careful person would not do. The law does not say what a reasonably careful person using ordinary care would or would not do under such circumstances."

Under the submitted jury instructions, Makmoura's duty was that of an innkeeper exercising ordinary care consistent with M Civ JI 10.05 and 10.02.

The jury was properly instructed on the law and found that Makmoura breached his duty of ordinary care. Trial evidence demonstrated that Makmoura never asked Fowler-Mitchell for identification, but he admittedly felt something was not right during the interaction, gave him a keycard, and never watched the monitors to surveil Fowler-Mitchell's actions in the hotel. [ECF No. 86, PageID.2269-2306].

Without weighing the evidence and reviewing it in the light most favorable to the Plaintiffs, the Court finds that evidence supported the verdict that Defendants breached their duty.

44

### 3. Sufficient Evidence Supports the Jury's Verdict that Defendants were a Proximate Cause of Plaintiffs' Injuries.

Defendants say that no evidence supports the jury's verdict that Makmoura's actions proximately caused harm to Plaintiffs. Defendants argue that McDowell's invitation to Fowler-Mitchell to come to the hotel room was the cause in fact of Plaintiffs' injuries. The jury found that McDowell was 80% responsible for his own injuries, Makmoura was 20%, and Dorsey had no negligence.

Defendants claim Plaintiffs did not provide sufficient evidence to support the jury's verdict. Specifically, they say Plaintiffs' assertion that Makmoura provided Fowler-Mitchell with a key card programmed to Plaintiffs' room is unsupported by evidence. However, Defendant's argument fails to address the evidence of Makmoura's actions considered by the jury in reaching its verdict. Makmoura admitted he gave Fowler-Mitchell a keycard and he is on video tape doing so. While the parties dispute whether Makmoura programmed the keycard to Plaintiffs' room, this was a disputed fact for the jury to decide.

Proximate cause includes an element of foreseeability that should be examined. *See Auto Owners Ins. Co. v. Seils*, 310 Mich. App. 132, 158 (2015). "Whether proximate cause or legal cause is established normally

requires examining the foreseeability of the consequences and whether the defendant should be held legally responsible for those consequences." *Id*. at 545.

Makmoura admitted that he felt uneasy during his interaction with Fowler-Mitchell but failed to act on his suspicion. This testimony could lead a jury to conclude that the harm to Plaintiffs was foreseeable. Additionally, Makmoura failed to ask Fowler-Mitchell for identification, knew hotel policy prohibited giving keycards to unregistered guests, and never looked at monitors to watch Fowler-Mitchell's actions after giving him the key card. The jury determined through consideration of the facts that Makmoura's actions were a proximate cause of the incident.

The Court cannot overturn the jury's verdict unless the evidence points so strongly in favor of the Defendants that reasonable minds could not come to a different conclusion. Without weighing the evidence and reviewing it in the light most favorable to the Plaintiffs, the Court finds the jury's causation verdict is based on sufficient evidence.

<u>**PART III**</u>

I.    **ECF No. 95, Defendants' Motion for Expenses and Attorney's Fees Pursuant to FRCP 37(c)(1)(A); and ECF No. 107, Defendants' Motion for Review of Plaintiffs' Bill of Costs and Objections to the Same.**

    **A. ECF No. 95, Defendants' Motion for Expenses and Attorney's Fees Pursuant to FRCP 37(c)(1)(A).**

        **1. Introduction.**

Defendants' motion seeks $17,105 in costs and attorney fees caused by Plaintiffs' failure to disclose Grant's expert report. [ECF No. 95, PageID.2725].

        **2. Analysis**

The Court already ruled that Defendants were entitled to reasonable costs and attorney's fees caused by Plaintiffs' failure to disclose Grant's report. [ECF No. 74]. Plaintiffs' Response to Defendants' Motion for Expenses and Attorney's Fees Pursuant to Fed. R. Civ. P. 37(c)(1)(A) improperly attempts to reargue the appropriateness of the Court's sanction. But it does raise two relevant arguments: (1) Defendants' fees are ordinary litigation expenses, not caused by Plaintiffs' failure to disclose; and (2) the fees and hours Defendants spent working are unreasonable.

47

Plaintiffs filed this case in January 2019. The Joint Rule 26(f) Discovery Plan required them to serve initial disclosures under Fed. R. Civ. P. 26(a)(1) by April 9, 2019, and expert reports under Fed. R. Civ. P. 26(a)(2) no later than December 1, 2019. [ECF No. 15, PageID. 108]. Defendants say that on or about April 14, 2019, Plaintiffs served initial disclosures on Defendants. They claim Plaintiffs did not submit expert disclosures by the Court's deadline.

Defendants sent interrogatories to Plaintiffs with requests for detailed information regarding experts Plaintiffs planned to retain, including expert reports.   Plaintiffs responded on October 21, 2019, but no reports were included. On June 19, 2020, the Court entered a Corrected Order Setting Dates and Notice of Hearing. [ECF No. 36]. Pursuant to this Order, "expert disclosures" were due by August 14, 2020, and "expert discovery" was to be completed by September 18, 2020. [ECF No. 36, PageID.1309].

The parties conducted discovery. The Court ruled on certain pretrial motions, and the parties conducted settlement negotiations to no avail. The Court eventually set February 14, 2022, as the trial date. This date was adjourned to March 22, 2022.

Importantly, the September 18, 2020, deadline for expert disclosures had not changed since the Court entered its Corrected Order Setting Dates

48

and Notice of Hearing. [ECF No. 36]. Defendants say Plaintiffs did not provide Grant's expert report until February 14, 2022, the day trial was originally supposed to start. The same day, Defendants filed a Motion to Strike Plaintiffs' Expert Barry Grant. [ECF No. 63]. With the new trial date, the Court reserved ruling on the motion until after Defendants scheduled Grant's deposition. It was the Court's understanding that this issue was not urgent given the new trial date. [ECF No. 98, PageID. 3039]. Defendants agreed.

On March 9, 2022, the Court entered an Order Setting Deadlines. [ECF No. 66]. It ordered Plaintiffs to file a response to Defendants' motion to strike and informed the parties that the Court would review the merits prior to the beginning of trial on March 22, 2022. [ECF No. 66].

With trial imminent, Defendants deposed Grant on March 17, 2022. During the final pretrial conference the next day, Defendants asked the Court to sanction Plaintiffs' counsel for the untimely disclosure of Grant's expert report. [ECF No. 98, PageID.3044]. By the end of the conference, Plaintiffs waived future economic damages and agreed not to call Grant as a witness since "his clients [were] employed for the last year and a half and [that is the gist of what Mr. Grant would be testifying to." [ECF No. 98, PageID.3043-44].

Four days later, on March 21, 2022, the Court entered an order, drafted and submitted by Plaintiffs' counsel, requiring Plaintiffs to pay the deposition expenses pertaining to Grant. [ECF No. 76, PageID.2040]. On March 22, 2022, the Court entered an Order Regarding Defendants' Motion to Strike Plaintiffs' Expert Grant and Final Pretrial Conference, [ECF No. 74]. It ordered "Plaintiffs' counsel, to pay Defendants' reasonable expenses, including attorney's fees, caused by the failure" to disclose Grant's expert report. FRCP 37(c)(1)(A)." [ECF No. 74, PageID.1897].

### 3. Fed. R. Civ. P. 37(c)(1)(A) Sanctions.

Fed. R. Civ. P. 37(c)(1)(A) says, "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure."

Plaintiffs believe their untimely disclosure did not cause Defendants to incur extra expenses because Defendants would have spent the same amount of money regardless of when the report was disclosed. [ECF No. 99, PageID. 3130]. They are incorrect.

50

During the final pretrial conference, Defense counsel detailed various conversations with Plaintiffs' counsel a week before trial. These conversations allegedly included Plaintiffs' counsel's lack of preparedness to produce Grant's file regarding his background, qualifications, and lack of information about his fees. [ECF No. 98, PageID. 3042]. During that conference, the Court stated to Plaintiffs' counsel, "you had an obligation under the rules a long time ago to provide Barry Grant's report and notes and all of those things, and I do believe this urgency is created more by you than by [Defendants' counsel], and so I'm going to enter an order that you pay Barry Grant's deposition fees." [ECF No. 98, PageID. 3046].

Grant's report concluded that Plaintiffs would sustain $6 million in lost present and future lost wages. Plaintiffs' untimely disclosure of his report led Defendants into a frensy trying to adequately prepare for and complete Grant's deposition a month before trial. According to Defendants, the late disclosure caused them to spend more time and money on the process of researching the law and facts regarding Plaintiffs' work history; researching and drafting the motion to strike; reviewing and fact checking Plaintiffs' expert's files and reports, which totaled close to 1,000 pages; and preparing for and completing Grant's six-hour discovery deposition. [ECF No. 100-2, PageID. 3203].

51

Defendants may have been required to do this work regardless of when the report was disclosed. However, Defendants may not have expended any time on Grant if Plaintiffs' counsel had prepared sooner, knew his clients had been working, and that perhaps they would drop their claims for future economic damages. Plaintiffs' late disclosure made the matter much more urgent, time consuming, and expensive as trial loomed less than a month away at the time Plaintiffs disclosed Grant's report. All the fees Defendants request in their motion were caused by Plaintiffs' failure to disclose Grant's expert report.

The hours Defendants worked on the above-mentioned tasks are reasonable as well. They billed a total of 42.8 hours. Defendants split hours up between a senior partner, Anthony Randazzo ($500 per hour); executive partner, Mathew Consolo ($350 per hour); and two associates, Senara Dollar and Derek Peterson ($175 per hour). [ECF No. 100-2].   Randazzo carried most of the load with 27.7 hours. [Id].

Defendants' counsel relies on the "lodestar" approach to demonstrate the reasonableness of their hourly rates. [Id]. Under this approach, "a court determines the reasonable fee by multiplying the reasonable number of hours billed by a reasonable billing rate." *Disabled Patriots of Am., Inc. v. Taylor Inn Enterprises*, Inc., 424 F. Supp. 2d 962, 965 (E.D. Mich. 2006)

(*citing Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir.1987)). In determining a reasonable hourly rate, "courts should look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fuhr v. School Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004). However, the court retains broad discretion to determine what constitutes a reasonable hourly rate. *Id*.; *Wells v. New Cherokee Corp.*, 58 F.3d 233, 239 (6th Cir.1995).

Under the lodestar analysis, $500.00 per hour is a reasonable hourly fee for senior partners with significant trial experience and $350.00 per hour is a reasonable fee for executive partners with significant trial experience. Similarly, $175.00 per hour is a reasonable rate for associates.

Defendants cite several cases where the Court found similar rates for similar attorneys to be reasonable. [ECF No. 95, PageID.2724]. *See Gerber v. Herskovitz*, No. 19-13726, 2022 WL 246881, at *5 (E.D. Mich. Jan. 25, 2022) (finding a reasonable hourly rate of $425); *Williams v. First Network LLC*, No. 1:20-CV-965, 2021 WL 5834408, at *2 (W.D. Mich. Oct. 6, 2021) (finding a reasonable hourly rate of $425); *Potter v. Blue Cross Blue Shield of Michigan*, 10 F. Supp. 3d 737, 747 (E.D. Mich. 2014) (finding a reasonable hourly rate of $425 seven years ago).

The State Bar of Michigan 2020 Economics of Law Practice Attorney Income and Billing Rate Summary Report states that the 25th percentile of attorneys in Wayne County charge $225 per hour. The median rate is $295 per hour. The 75th-95th percentile of attorneys charge $375-$583 per hour. [ECF No. 99-3, PageID.3166]. Defense counsel's hourly rates are in line with the State Bar's survey.

Once the lodestar amount is calculated, fees may be adjusted in consideration of a number of factors: (1) time and labor; (2) difficulty of the case; (3) skill necessary; (4) the extent the attorney is precluded from working on other matters; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations; (8) the amount involved and results obtained; (9) the attorneys' experience, reputation, and ability; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir.1999).

Plaintiffs' counsel argues that the hourly rates for all attorneys who billed on Grant should be reduced. The Court finds that Defense counsel submitted a bill with a reasonable number of hours expended and reasonable hourly rates. These expenses could have been avoided, if Plaintiffs' counsel

had been more diligent in determining how Grant's opinion would impact their case.

Defendants' Motion is **GRANTED**.

### B. ECF No. 107, Defendants' Motion for Review of Plaintiffs' Bill of Costs and Objections to the Same.

Plaintiffs seek payment for non-taxable costs pursuant to the Eastern District of Michigan Bill of Costs Handbook ("Handbook"). [ECF No. 107-2]. Plaintiffs submitted a Bill of Costs totaling $8,910.34. [ECF No. 105]. Defendants filed objections to it. [ECF No. 107]. The taxation clerk entered a Taxed Bill of Costs awarding Plaintiffs $400.00 for an item entitled "fees of the clerk." [ECF No. 109, PageID. 3757]. Plaintiffs request review of the taxable costs and submit additional information, arguing that they should be awarded an additional $3,602.59. Defendants also request review of Plaintiffs' Bill of Costs. They argue that Plaintiffs are entitled to $940 in costs, included the $400 already awarded.

Plaintiffs request an additional $110 for Daniel Tar's trial witness fees, and $80 for service fees. They also request additional costs totaling $1,520.83 for the transcripts of Dorsey, McDowell, Makmoura, Saad Yousif, and Ray Kouza. Finally, Plaintiffs request an additional $1,976.76 in costs for the transcripts and video depositions of Tamara Johnson and Jennifer

Jordan used during trial. These costs also include video editing, equipment preparation, and recording by Delacruze Video and Imaging.

Service fees are not taxable for the reasons stated in the Handbook: no receipts/invoices were provided as supporting documentation. [ECF No. 107-2, PageID. 3360] ["It is counsel's responsibility to attach documentation to support the claims made as exhibits. Documentation may include receipts, orders and stipulations of the parties. Counsel must ensure that any receipts are self-explanatory (i.e., receipts for service shall include the names of the individuals, why they were served, where they were served, and the cost for service). The taxation clerk will disallow any expenses that do not have itemized or supporting documentation"].

The witness fees for Daniel Tar ($110) are taxable and Defendants have no objection to the taxation of these costs. [ECF No. 119, PageID. 3931].

Transcript costs for McDowell, Dorsey, and Makmoura are taxable. Plaintiffs used the transcripts to support their Response to Defendants' Motion for Summary Judgment. Plaintiffs' brief cites the document and pages where the transcripts were used. [See ECF No. 115, PageID.3882] and [ECF No. 107-2, PageID.3362] [section (II)(C)(1)(d), transcripts used in support of a motion are taxable]. Plaintiffs did not attach an invoice for Kouza's

56

transcript, so that cost is non-taxable. [See ECF No. 172-2, PageID. 3360] ["[t]he taxation clerk will disallow any expenses that do not have itemized or supporting documentation"].

The invoices for McDowell, Dorsey, and Makmoura transcripts total $1058.25. The Court awards Plaintiffs $1058.25 for these transcripts.

Transcript costs for Jennifer Jordan and Tamara Johnson's depositions are non-taxable because they were not used to support a motion and were never read into the record at trial.

The Delacruze invoices for video editing and equipment preparation at trial for Jennifer Jordan and Tamara Johnson's deposition testimony ($543.61, $127,00, and $305.00) are taxable and supported by documentation. [See ECF No. 107-2, PageID. 3361] [Section (II)(C)(1)(e)].

Case evaluation fees ($160.00) are not taxable under Section II(K)(1)-(2) of the Bill of Costs Handbook. [ECF No. 107-2, PageID. 3364-3365] [mediation fees are non-taxable].

Travel expenses incurred by Plaintiffs and their attorney(s) ($77.29, $398.30, $205.02, $24.00, $42.00, $187.98, $1,012.60, $640.00, $640.00, $306.56, and $517.30; see Page ID 3286- 3287) are not taxable pursuant to

sections II(C)(2)(c), page 4, Section II(E)(2)(a), page 5, and Section II(K)(2)(a), page 7. [ECF No. 107-2, PageID.3362-3363, 3365].

The **Court GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Review of Plaintiffs' Bill of Costs. The Court will enter an order **awarding Plaintiffs $2143.68 in taxable costs** for the witness fees of Daniel Tar ($110), Makmoura, Dorsey, and McDowell's deposition transcripts ($1058.25), and the Delacruze invoices for video editing of Jennifer Jordan and Tamara Johnson's deposition testimony ($975.61).

## PART IV

The Court **DENIES** ECF No. 101. The Court **GRANTS IN PART AND DENIES IN PART** ECF No. 102. The Court **DENIES**: ECF Nos. 103 and 106. The Court **GRANTS** ECF No. 95. Finally, the Court **GRANTS IN PART AND DENIES IN PART** ECF No.107.

Through this order, the Judgment Defendants owe Dorsey is reduced by $36,000 (future non-economic damages awarded to Dorsey); Plaintiffs are awarded taxable costs totaling $2143.86. Defendants are awarded $17,105 in reasonable costs and attorney's fees caused by Plaintiffs' failure to timely disclose Grant's expert report. Otherwise, the verdict stands as rendered.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 25, 2022